Nollie Lee MARTIN,
Petitioner–Appellant,

v.

Richard L. DUGGER, Secretary, Florida
Department of Corrections,
Respondent–Appellee.

No. 88–6127.

United States Court of Appeals,
Eleventh Circuit.

Dec. 14, 1989.

Richard H. Burr, III, New York City and Bruce Rogow, Nova University Law Center, Ft. Lauderdale, Fla., for petitioner-appellant.

Robert A. Butterworth, Atty. Gen., Joy B. Shearer, and Joan Fowler, Asst. Attys. Gen., West Palm Beach, Fla., and Carolyn Spurkowski, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and HILL, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Nollie Lee Martin was convicted of murder and other crimes and was sentenced to death. The facts are reported in the Florida Supreme Court opinion affirming Martin's conviction. *Martin v. State,* 420 So.2d 583 (Fla.1982). The United States Supreme Court denied certiorari review.

460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). Martin then filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The state trial court denied relief, and the Florida Supreme Court affirmed. *Martin v. State*, 455 So.2d 370 (Fla.1984). Martin's first federal habeas petition was denied by the district court, and was affirmed by this court. *Martin v. Wainwright*, 770 F.2d 918 (11th Cir.1985). The United States Supreme Court denied certiorari. *Martin v. Wainwright*, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986).

Martin next filed an original habeas petition in the Florida Supreme Court, which granted a stay, dismissed the petition, and directed him to proceed under Rule 3.811 of the Florida Rules of Criminal Procedure. Thereafter the Florida Supreme Court vacated its stay, and Martin returned to district court with his second habeas corpus petition. The district court stayed the execution, and, after an evidentiary hearing, denied relief. *Martin v. Dugger*, 686 F.Supp. 1523 (S.D.Fla.1988).

Martin raises three issues on appeal: whether the sentencing jury and judge properly weighed non-statutory mitigating evidence under *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); whether the burden placed upon Martin to prove his insanity defense was unconstitutional under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and whether he received effective assistance of appellate counsel. We conclude, as did the district court, that Martin's first claim fails on the merits, his second is procedurally barred, and his third is an abuse of the writ. Although we agree with the district court that the ends of justice does not require us to reach the merits of Martin's third claim, we disagree with the district court's analysis. With this exception, we affirm on the basis of the district court's opinion, *Martin v. Dugger*, 686 F.Supp. 1523 (S.D.Fla.1988), the denial of the writ of habeas corpus.[1]

*Abuse of the Writ and the Ends of Justice*

Martin's instant habeas petition alleged for the first time a claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that his appellate counsel had been ineffective. Although there was no intervening change in the law or the facts, Martin, having failed to include the *Strickland* claim in his first petition, presented the claim in his second petition. Looking to the appropriate case law, the district judge in the exercise of his discretion held that Martin had abused the writ. The district judge continued his analysis by considering whether or not the ends of justice required that the merits of Martin's *Strickland* claim be reached nonetheless. The district court concluded that the ends of justice did not so require, and we agree. The district court, however, supplied an inaccurate statement of the law in support of its conclusion, stating that the ends of justice require consideration of the merits *"only* if a petitioner 'supplements his constitutional claims with a colorable showing of factual innocence.'" *Martin v. Dugger*, 686 F.Supp. 1523, 1532 (S.D. Fla.1988) (quoting *Kuhlmann*, citing Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 Chi.L.Rev. 142 (1970)) (emphasis added).

*Kuhlmann v. Wilson & The Colorable Showing of Factual Innocence*

■ The district court relied on language from Part III of *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), in which only four justices joined. Justice Powell, joined by Chief Justice Burger and Justices Rehnquist and O'Connor, wrote that the ends of justice require federal courts to entertain successive petitions "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Kuhlmann*, 477 U.S. at 454, 106 S.Ct. at 2627 (plurality opinion). As a mere plurality, however, the proposed holding of Part III is neither the law of the land, binding precedent, nor sufficient to overcome previ-

---

**1.** Martin's claim under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), was not appealed, and accordingly it is deemed abandoned. *Toles v. Jones*, 888 F.2d 95, 97 (11th Cir.1989) (per curiam); *Roberts v. Wainwright*, 666 F.2d 517, 518 (11th Cir.1982).

ous holdings by a majority of the Supreme Court. In dissent, Justice Brennan, joined by Justice Marshall, agreed "that actual innocence constitutes a sufficient justification for returning to court a second time with the same claim. [He did] not agree, though, that a prisoner's inability to make a showing of actual innocence negates an otherwise good justification...." 477 U.S. at 471, n. 5, 106 S.Ct. at 2636, n. 5. In addition, Justice Stevens, also dissenting, stated that "*one* of the facts that may properly be considered is whether the petitioner has advanced a "colorable claim of innocence." 477 U.S. at 476, 106 S.Ct. at 2639 (emphasis added).[2] Thus, *Kuhlmann* instructs the lower federal courts that a colorable showing of factual innocence is *one* of the factors that may be considered in deciding whether or not to reach the merits on a successive petition, defined as one which "raises grounds identical to those raised and rejected on the merits on a prior petition." 477 U.S. at 444, n. 6, 106 S.Ct. at 2622, n. 6 (plurality opinion).

We have noted before that the restriction proposed by the *Kuhlmann* plurality neither binds us nor controls preexisting law on the ends of justice. *See Fleming v. Kemp*, 837 F.2d 940, 943, n. 1 (11th Cir. 1988) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 1764, 104 L.Ed.2d 200 (1989); *Messer v. Kemp*, 831 F.2d 946, 958, n. 19 (11th Cir.1987), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 2859, 101 L.Ed.2d 896 (1988). We must follow controlling Supreme Court precedent, *cf. Rodriguez de Quijas v. Shearson/American Express, Inc.*, —— U.S. ——, 109 S.Ct. 1917, 1922–23, 104 L.Ed.2d 526 (1989) (dissent) (disapproving failure of court of appeals to adhere to Supreme Court precedent), and in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the Supreme Court described examples of circumstances where the district court appropriately would invoke the ends of justice to consider the merits of a successive petition[3] presenting claims which had previously been adjudicated on the merits: where the previous hearing was not "full and fair" or where there had been an "intervening change in the law" or there was "some other justification for having failed to raise a crucial point or argument in the prior application." 373 U.S. at 17, 83 S.Ct. at 1078. The Court

**2.** Thus, a majority of the court agrees that a showing of innocence is a factor that may be appropriately considered. *Cf. Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 2336, n. 1, 101 L.Ed.2d 155 (1988) (dissent) (where concurrence along with plurality constitutes a majority for the judgment, then the holding is limited to the narrowest position, whether of the plurality or the single concurrence); *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'"). Although in *Kuhlmann* the premise that factual innocence is one of the grounds to be considered commands a "majority" only by grouping justices who disagree as to the result, nonetheless we believe this situation is sufficiently analogous to that of *Franklin v. Lynaugh* and *Marks v. United States* to warrant deference to the common ground among members of the fragmented Court. This is especially true as the three dissenting justices made explicit their agreement with the more limited premise (that factual innocence was *one* of the factors to consider), which was encompassed by the position of the four justice plurality. We

note that the panel in *Jones v. Henderson*, 809 F.2d 946, 952 (2d Cir.1987), reached a similar conclusion by considering the "common ground" between the plurality and Justice Stevens' dissent, and there instructed the district court to include a colorable showing of innocence as one of the factors to consider in deciding whether or not to reach the merits of the petitioner's claim.

Even the *Kuhlmann* plurality opinion, which restricts the ends of justice inquiry to only a colorable showing of innocence, limits its application to successive petitions as distinguished from abusive petitions. Justice Powell states, "This case involves, and our opinion describes, *only* the standard applicable to *successive* petitions for federal habeas corpus relief." 106 S.Ct. at 2628, n. 18 (emphasis in original).

**3.** For the sake of clarity, we note that an abusive petition is often chronologically, a successive petition, although an initial petition brought solely for purposes of harassment or vexation could be deemed an abuse. In *Sanders*, the Court distinguished between two types of successive petitions, those that had been previously heard and decided on the merits and those that inexcusably raised new grounds. This distinction is generally consonant with the scheme laid out by the *Kuhlmann* plurality.

stated that the enumerated examples were not exhaustive nor could the ends of justice be "too finely particularized." *Id.* The application of the ends of justice in individual cases was left to the discretion of district judges as "[t]heirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits. Even as to such an application, the federal judge clearly has the power—and, if the ends of justice demand, the duty—to reach the merits." 373 U.S. at 18, 83 S.Ct. at 1079.

█ That is not to say that the discretion of district judges is unbounded. We have held that the ends of justice exception does not require reaching the merits of a claim that does not allege a violation of the federal law or constitution or where the record discloses the absence of such a violation. *See Messer v. Kemp,* 831 F.2d at 958–59 ("Because we conclude, as a matter of law, that the record in this case fails to disclose [the alleged constitutional violation], our 'ends of justice' analysis need not proceed any further."). In light of the fact that federal habeas corpus relief for prisoners in state custody may be granted only upon a showing of violation of the federal constitution, it follows that a district court, in the absence of such a violation, does not have the authority to grant relief in the name of the ends of justice.

█ In sum, where an alleged constitutional violation is contained in an abusive petition, the district court may, in the exercise of its sound discretion, decide to hear the merits of the claim if the ends of justice so require, and is not constrained to examine only those cases where the petitioner has made a colorable showing of innocence. In this case, as the district court's opinion makes clear, the petitioner failed to prove a meritorious constitutional claim; accordingly, relief was denied properly. Therefore, we AFFIRM on the basis of the district court's opinion insofar as it is consistent with our discussion above.

HILL, Senior Circuit Judge, concurring:

I fully concur in the judgment of the court affirming the district court in this case. We have done more than that. We use this case as a means of publishing a method of evaluating whether or not the ends of justice require consideration of claims constituting an abuse of the writ. Our discourse on that subject is contrary to the assertions of the state, but the state is the appellee and our judgment affirming makes it highly unlikely that the state will ask the Supreme Court to review our elaboration of the ends of justice analysis.

I shall not unsay anything that I have said on this subject in *Gunn v. Newsome,* 881 F.2d 949, 965 *passim* (11th Cir.1989) (Hill, J. dissenting) and *Moore v. Kemp,* 824 F.2d 847, 877 *passim* (11th Cir.1987) (Hill, J. dissenting). However, my views were in dissent and our court has not accepted those views. The law of this circuit which binds me is made by the court. Whether or not I agree adds nothing to the law. Having set forth my views, the judicial function is not properly performed by my repeating myself like a broken record or words and sentences called up on a word processor!

I concur.