Larry Joe JOHNSON, Petitioner–Appellee, Cross–Appellant,

v.

Harry K. SINGLETARY, Jr., Secretary of the Florida Department of Corrections, Respondent–Appellant, Cross–Appellee.

No. 93–2497.

United States Court of Appeals, Eleventh Circuit.

May 7, 1993.

Certiorari Denied May 8, 1993.

113 S.Ct. 2049.

See also 442 So.2d 185.

Mark C. Menser, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for petitioner-appellee.

Martin J. McClain, Capital Collateral Representative, Office of the Capital Collateral Representative, Tallahassee, FL, for respondent-appellant.

Before FAY, HATCHETT and BLACK, Circuit Judges.

PER CURIAM:

Petitioner, Larry Joe Johnson, a Florida death row inmate, filed a third federal petition for a writ of habeas corpus after the Governor of the State of Florida had signed a fourth death warrant. The district court granted the writ and stayed Johnson's execution. Respondent, Harry K. Singletary, filed a Notice of Appeal and a Motion to Vacate Stay of Execution and Writ of Habeas Corpus. In his motion the Respondent asserts that Petitioner's third petition for habeas corpus should not have been granted by the district court because all of the claims are procedurally barred and constitute either an abuse of the writ or an improper successive petition. The district

court granted the writ because it found that a claim, which had been brought previously, should be redetermined based upon an intervening change in the law. For the reasons stated below, we reverse.

## I. PROCEDURAL HISTORY

The petitioner, Larry Joe Johnson, was convicted of first-degree murder and robbery with a firearm for the robbery of a convenience store and the murder of the store clerk. On November 17, 1983, the Florida Supreme Court affirmed both convictions and sentences, and on January 16, 1984, it denied rehearing. *Johnson v. State*, 442 So.2d 185 (Fla.1983). The United States Supreme Court denied Johnson's petition for certiorari. *Johnson v. Florida*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984). On January 23, 1985, the Circuit Court for the Third Judicial Circuit of Florida denied without hearing Johnson's Rule 3.850 motion for post-conviction relief. The Florida Supreme Court affirmed the denial on January 28, 1985, also denying Johnson's petition for a writ of habeas corpus. *Johnson v. Wainwright*, 463 So.2d 207 (Fla.1985). The same day, Johnson filed a federal habeas corpus petition and a motion for stay of execution in the United States District Court for the Northern District of Florida. On January 29, 1985, the district court denied the writ but granted a certificate of probable cause. This Court affirmed the district court's denial of the petition. *Johnson v. Wainwright*, 778 F.2d 623 (11th Cir.1985), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).

After the Governor signed a second death warrant on January 29, 1988, Johnson filed a petition to the Florida Supreme Court for relief pursuant to *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). The Florida Supreme Court denied relief and refused to grant a stay of execution. *Johnson v. Dugger*, 520 So.2d 565 (Fla.1988). On March 3, 1988, Johnson filed his second Rule 3.850 motion, which was summarily denied. The Florida Supreme Court affirmed, holding that all of the claims were procedurally barred. *Johnson v. State*, 522 So.2d 356 (Fla.1988).

Johnson then filed his second federal habeas corpus petition; the district court denied relief on all counts and found an abuse of the writ. This Court affirmed the district court's denial of the writ. *Johnson v. Dugger*, 932 F.2d 1360 (11th Cir.), *cert. denied*, *Johnson v. Singletary*, —— U.S. ——, 112 S.Ct. 427, 116 L.Ed.2d 446 (1991).

The mandate was returned on November 18, 1991. Governor Chiles signed a third death warrant on January 7, 1993. The warrant period began at noon, Tuesday, February 2, 1993, and was to expire at noon, Tuesday, February 9, 1993; the execution was scheduled for 7:00 a.m. on Wednesday, February 3, 1993. On Thursday, January 21, 1993, Johnson filed an Application for Stay of Execution and a Rule 60(b) Motion for Relief from Judgment in the United States District Court for the Northern District of Florida. He filed a Petition for Extraordinary Relief and for a Writ of Habeas Corpus with the Florida Supreme Court on Monday, January 25, 1993. On Friday, January 29, 1993, the Florida Supreme Court denied Johnson's petition, but the next day the Governor issued a stay of execution of indefinite duration.

On April 15, 1993, the Governor signed Johnson's fourth death warrant, to run from noon, Tuesday, May 4, 1993, until noon, Tuesday, May 11, 1993. The execution was scheduled for 7:00 a.m. on Wednesday, May 5, 1993. On April 28, 1993, Johnson filed a petition for writ of certiorari in the United States Supreme Court. On April 28, 1993, he also filed, in the Florida Supreme Court, a Motion to Recall the Mandate and for Stay of Execution and an Emergency Application for Stay of Execution Pending the Filing and Disposition of a Petition for Writ of Certiorari. On April 30, 1993, the Florida Supreme Court denied all relief. On May 3, 1993, the United States Supreme Court denied Johnson's petition for a writ of certiorari and his application for a stay of execution.

On April 29, 1993, Johnson filed his third federal habeas corpus petition. On May 4, 1993, the district court granted Johnson's

third petition, vacated his death sentence, and stayed the execution. Respondent filed a Notice of Appeal and a Motion to Vacate Stay of Execution and Writ of Habeas Corpus on May 5, 1993. On May 6, 1993 the Petitioner filed a Motion to Dismiss Respondent–Appellant's Motion to Vacate Stay of Execution and Writ of Habeas Corpus and a Notice of Cross–Appeal.

## II. DISCUSSION

Petitioner, Larry Joe Johnson, raised three issues in his third petition for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254. All of the grounds were based on the alleged invalidity of various aggravating factors, either considered by the jury or found by the sentencing judge. First, Johnson argued that because he was convicted of first-degree felony murder, the use of the statutory aggravating factors: "in the course of a felony" and "for pecuniary gain," did not channel the jury's discretion as required by the Eighth Amendment.[1] Second, he contended that the statutory aggravating circumstances were facially vague and overbroad, and that vagueness was not cured by adequate narrowing instructions in this case. Finally, Johnson asserted that the recommendation of a death sentence by the sentencing jury was tainted by the consideration of invalid aggravating circumstances.

The district court granted the writ on the first ground raised and stayed Johnson's execution. The district court held that the second and third claims, which were never raised on the previous petitions, were procedurally barred. The district court further held that the Petitioner had not shown cause for the procedural default and that there was no other justification to reach the merits of those claims. We agree and affirm the denial of the writ on those two grounds based upon the reasoning in the district court's opinion.

On the Petitioner's first claim, the district court found that it was not barred by state procedural rules but that it was raised on a previous federal petition and determined on the merits. The district court held that because the claim was a successive petition, it need not reach the merits of the claim unless the Petitioner showed cause and prejudice or the ends of justice required redetermination of the previously decided issue. The district court further found that the Petitioner had failed to show cause for his repetitious claim and that he could not satisfy the "actual innocence" standard of *Sawyer v. Whitley*, —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). *See also, Johnson v. Singletary*, 938 F.2d 1166 (11th Cir.1991) (en banc).

Pursuant to this Court's holding in *Martin v. Dugger*, 891 F.2d 807 (11th Cir.1989), however, the district court held that the ends of justice standard could be met even where there was no colorable showing of actual innocence. In this case, the district court held that the ends of justice required it to reach the merits of the successive claim because there was an "intervening change in the law." 891 F.2d at 809 (quoting *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963)).

In particular, the district court summarily concluded that the Supreme Court's holding in *Stringer v. Black*, —— U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), rendered the prior holding in *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), inapplicable to a weighing state, such as Florida. According to the district court, the previous disposition of Johnson's claim by this Court[2] that applied *Lowenfield* to a weighing state is not consistent with *Stringer*.[3] Accordingly,

---

1. The Petitioner also contends that the Supreme Court's grant of certiorari in the case of *Tennessee v. Middlebrooks*, 840 S.W.2d 317 (Tenn. 1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 1840, 123 L.Ed.2d 466 (1993), supports his claim that the duplication of an element of the offense and an aggravating factor violates the Eighth and Fourteenth Amendments. The grant of certiorari is not an intervening change in the law.

2. *Johnson v. Dugger*, 932 F.2d 1360 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 427, 116 L.Ed.2d 446 (1991).

3. *Johnson* is not the only case in this Circuit to apply *Lowenfield* to a weighing state. *See Berto-*

the district court concluded that *Stringer* is the type of intervening change in the law that the ends of justice require the court to reach the merits of this repetitious claim.

## A. ENDS OF JUSTICE

The district court reached the merits of the Petitioner's first claim notwithstanding the fact that the same claim had been raised in the previous petition and had been rejected on the merits, notwithstanding the fact that the district court found that the Petitioner could not show cause for the repetitious filing, and notwithstanding the fact that this claim did not amount to a colorable showing that the Petitioner was "actually innocent" of the death penalty. Relying on *Martin v. Dugger*, 891 F.2d 807 (11th Cir.1989), the district court held that the "ends of justice" required that it reach the merits of the claim because of an intervening change in the law.

To the extent that *Martin* defined the "ends of justice" exception in the context of abusive petitions to allow a court to reach the merits of an abusive or successive petition without cause and prejudice or a colorable showing of actual innocence, that decision was clearly overruled by the Supreme Court's decision in *Sawyer v. Whitley*, 505 U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), and this Court's en banc decision in *Johnson (Marvin) v. Singletary*, 938 F.2d 1166 (11th Cir.1991), which was cited with approval in *Sawyer*.

In *Sawyer v. Whitley*, the Supreme Court held that

[u]nless a habeas petitioner shows cause and prejudice, a court may not reach the merits of: (a) successive claims which raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised which constitute an abuse of the writ; or (c) procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims.

505 U.S. at ——, 112 S.Ct. at 2518, 120 L.Ed.2d at 279 (citations omitted). The only exception to this rule is that "a federal court may hear the merits of the successive claims if the failure to hear the claims would constitute a 'miscarriage of justice.'" *Id.*

Similarly, this Court in *Johnson (Marvin)* clearly stated that there are only two exceptions to procedural default bars. Those two exceptions are "cause and prejudice" and "a narrow second exception: 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" 938 F.2d at 1174 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

The "miscarriage of justice exception would allow successive claims to be heard if the petitioner 'establish[es] that under the probative evidence he has a colorable claim of factual innocence.'" 505 U.S. at ——, 112 S.Ct. at 2519, 120 L.Ed.2d at 280. Although the Court went on to state that it is possible to show a colorable claim of factual innocence of the death penalty, the Petitioner in this case has failed to make that showing.

As explained in *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986), the "concept of 'actual,' as distinct from 'legal,' innocence does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense."[4] "The phrase 'innocent of death' is not a natural usage of those words." *Sawyer*, 505 U.S. at ——,

---

*lotti v. Dugger*, 883 F.2d 1503, 1527–28 (11th Cir.1989).

**4.** [The] standard for determining actual innocence was articulated in *Kuhlmann* as: "[T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the

trial, the trier of facts would have entertained a reasonable doubt of his guilt.'" *Sawyer v. Whitley*, 505 U.S. ——, —— n. 5, 112 S.Ct. 2514, 2519 n. 5, 120 L.Ed.2d 269, 280 n. 5 (1992) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 455, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970))).

112 S.Ct. at 2520, 120 L.Ed.2d at 281. The *Sawyer* Court held that the test for actual innocence of the death penalty must "focus on those elements which render a defendant eligible for the death penalty." 505 U.S. at ——, 112 S.Ct. at 2523, 120 L.Ed.2d at 285. The petitioner must show "by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law. 505 U.S. at ——, 112 S.Ct. at 2525, 120 L.Ed.2d at 287.

■ To understand this rule in the context of Florida's death penalty statute we turn to the "eligibility" rule enunciated by this Court in *Johnson (Marvin) v. Singletary*, 938 F.2d 1166 (11th Cir.1991) (en banc), and specifically endorsed by the *Sawyer* Court. 505 U.S. at ——, 112 S.Ct. at 2523, 120 L.Ed.2d at 285. Under Florida law, the jury must find at least one statutory aggravating circumstance in order to recommend a death sentence. In *Johnson*, the Court held, that in order to make a showing of actual innocence of the death penalty, the petitioner must demonstrate that "an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body. That is, but for the alleged constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty." 938 F.2d at 1183 (emphasis in original). In other words, even if the petitioner can show that but for the constitutional error the weighing of the factors might have been different, this is not enough to make a colorable showing of actual innocence.

In this case, Johnson's petition challenges two of the three aggravating factors found by the sentencing judge, and another factor considered by the jury but explicitly not found by the sentencing judge. Since Johnson is not challenging all of the aggravating factors and since he would still be eligible for the death sentence even if his challenge were upheld, we hold that Johnson has not made a colorable showing of actual innocence of the death

penalty pursuant to the rule announced in *Johnson* and endorsed in *Sawyer*. Accordingly, we hold that the district court erred in reaching the merits of Petitioner's claim.

## B. APPLICABILITY OF *LOWENFIELD*

■ Although our decision is not based upon the merits of whether an intervening change in the law occurred, in the interest of completeness we address the *Lowenfield* issue. The district court held that the Supreme Court's decision in *Stringer v. Black*, 503 U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), undermines this Court's analysis of Petitioner's first claim when it was raised in his previous habeas corpus petition. The district court's Order does not explain how *Stringer* undermines the applicability of *Lowenfield* to this case. We, therefore, begin this discussion with a summary of *Lowenfield*.

In *Lowenfield*, the petitioner had been convicted of, *inter alia*, three counts of first degree murder. An essential element of those convictions was that the petitioner intended " 'to kill or inflict great bodily harm upon more than one person.' " 484 U.S. at 233, 108 S.Ct. at 548 (quoting La. Rev.Stat.Ann. § 14:30 A(3) (West 1986)). After a separate sentencing hearing, the jury returned death sentences on all three first-degree murder verdicts. The jury found the statutory aggravating circumstance of " 'knowingly creat[ing] a risk of death or great bodily harm to more than one person.' " *Id.* at 235, 108 S.Ct. at 549 (quoting La.Code Crim.Proc.Ann. art. 905.-4(d) (West 1984)). The Supreme Court held that the duplicative nature of an element of the underlying conviction and the sole aggravating circumstance did not violate the Eighth Amendment. "To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' " *Id.* at 244, 108 S.Ct. at 554 (quoting *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)).

In Johnson's previous appeal, we held that "[t]he Florida sentencing scheme as applied in Johnson's case 'genuinely narrows the class of persons eligible for the death penalty.' The sentencing court's individualized 'consideration of mitigating circumstances and ... exercise of discretion' were sufficient to satisfy the requirements of the Eighth and Fourteenth Amendments." 932 F.2d at 1369–70 (footnotes omitted). We rejected Johnson's argument holding that the fact that an element of the underlying conviction and one of the aggravating factors was duplicative did not invalidate that aggravating factor. The district court's Order granting the writ is based.upon its belief that *Stringer* somehow undermines this analysis.

In *Stringer v. Black*, 503 U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Supreme Court held that when a sentencing jury, in a weighing state, considers a constitutionally invalid aggravating factor, the appellate courts "may not assume it would have made no difference if the thumb had been removed from death's side of the scale." 503 U.S. at ——, 112 S.Ct. at 1137, 117 L.Ed.2d at 379. The issue in *Stringer* was the jury's consideration of the "heinous, atrocious, and cruel" aggravating factor. Nothing in *Stringer* indicates that there is any constitutional infirmity in the Florida statute which permits a defendant to be death eligible based upon a felony murder conviction, and to be sentenced to death based upon an aggravating circumstance that duplicates an element of the underlying conviction.

*Stringer* stands for the proposition that if Johnson's jury had considered an invalid aggravating factor, we must assume that that factor affected their weighing process. It does not hold that the consideration of the felony murder. aggravating factor in this case is invalid. We hold that *Stringer v. Black* is not an intervening change in the law, which undermines the previous decision in this case, and that Johnson's successive claim constitutes an abuse of the writ.

Accordingly, we REVERSE the district court's Order granting the writ of habeas corpus, DISMISS the cross-appeal, VA-

CATE the stay of execution, and instruct the district court to dismiss Johnson's petition. The Clerk is instructed to issue the mandate in this matter at 4:00 p.m. on Friday, May 7, 1993.