UNITED STATES of America,
Plaintiff–Appellee,

v.

John Javilo McCULLAH, Defendant–Appellant.

No. 93–7118.

United States Court of Appeals,
Tenth Circuit.

June 26, 1996.

Gary Peterson, Oklahoma City, Oklahoma (Stephen J. Greubel and Stephen J. Knorr of the Office of the Federal Public Defender, Tulsa, Oklahoma, with him on the brief), for Defendant–Appellant.

Robert J. Erickson, Department of Justice, Washington, DC (John Raley, United States Attorney, Sheldon J. Sperling and Paul G. Hess, Assistant United States Attorneys, Muskogee, Oklahoma, with him on the brief), for Plaintiff–Appellee.

Before SEYMOUR, Chief Judge, ANDERSON and KELLY, Circuit Judges.

## ORDER

PAUL KELLY, Jr., Circuit Judge.

This matter comes on for consideration of Defendant McCullah's petition for rehearing and the government's petition for rehearing with en banc suggestion in *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996). Relying upon *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) and *United States v. Flores,* 63 F.3d 1342 (5th Cir.1995), *petition for cert. filed,* No. 95–8346 (Mar. 14, 1996), the government argues that the panel incorrectly decided that aggravating factors which overlap are impermissible. The government also argues that the panel misapplied *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), in finding that Mr. McCullah's statements to Lozano were coerced. The panel concludes that original disposition is correct; although Judge Anderson concurred in the panel disposition, he now dissents from the denial of the government's rehearing petition and the denial of the en banc suggestion.

## A.

We disagree with the dissent's analysis of the aggravating factors and reject the government's argument that *Flores* is on point and that the factors do not overlap in this case. *Flores* involved multiple murders—the defendant personally killed one victim and hired others to kill the other two victims. For two of the victims, the jury found multiple (n)(1) aggravating factors, namely that the defendant "intentionally killed the vic-

tims" and that the defendant "intentionally engaged in conduct intending that the victims be killed or that lethal force be employed against the victims." *Flores,* 63 F.3d at 1372.

The Fifth Circuit found that these factors were not duplicative under the facts in *Flores* stating:

> [I]ntentionally killing and intentionally engaging in conduct intending that the victim be killed are not necessarily identical conduct. A defendant who personally murders a victim has a different mental state than one who pays others to kill. Similarly, a defendant who personally kills and hires others to assist him during the killing has more than one blameworthy intention. Although the ultimate goal is the same— the victim's death—the defendant's intentions as to how he will achieve that goal are not singular. It is not irrational for Congress to decide that a defendant with such a dual intent should be treated as more deserving of death than a defendant with only one.

*Id.*

At a glance it may seem that the same reasoning might apply to Defendant McCullah, but a closer examination of the facts of *Flores* reveals the crucial distinctions. In *Flores,* the defendant attempted to have one of the victims killed on prior occasions before finally succeeding. *Id.* at 1351–52. These prior attempts supported the "engaging in conduct intending that the victims be killed" aggravating factor, which was separate and distinct from the "intentional killing" factor which pertained to the actual murder. Similarly, the other victim was tracked down by the defendant and his henchmen and interrogated by one of the defendant's accomplices in the defendant's armed presence. Then the defendant ordered the victim away, but evidently changed his mind and decided to kill him, shooting him numerous times. The jury may have found that the tracking down and the armed interrogation by the accomplice supported the lethal conduct aggravating factor, separate from the actual shooting which supported the intentional killing factor. The Fifth Circuit's reasoning endorses this

idea, stating "a defendant who personally kills and hires others to assist him during the killing has more than one blameworthy intention." *Flores*, 63 F.3d at 1372. Simply put, the defendant in *Flores* engaged in separate acts which supported different aggravating factors.

By contrast, the aggravating factors alleged in this case, which are different than those in *Flores*, overlapped because they were predicated upon the same acts by McCullah—namely, that McCullah identified the victim and drove him to the ambush site. First, the jury found as aggravating factors that McCullah "intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim" and that McCullah "committed the offenses as to which he is charged in the indictment." One of the offenses charged in the indictment was that McCullah "did intentionally kill an individual, or did intentionally counsel, command, induce, procure, or cause the killing of an individual, and such killing did result or happen." The latter aggravating factor—"committed the offenses . . ."—necessarily includes the acts which support the first aggravating factor, which consisted primarily of driving the victim to the ambush site. The latter factor may be broader than the former, but the fact remains that the former is subsumed by the latter and thus is redundant.

Second, the jury in this case found as an aggravating factor that McCullah "intentionally engaged in conduct which he knows creates a grave risk of death and that such death results." This factor largely duplicates the first aggravating factor, "intentionally engaged in conduct intending that the victim be killed . . . ." The same underlying conduct by McCullah—again the act of driving the victim to the ambush site—is used to support both factors.

Additionally, although ingenious, the government never suggested that "scouting the intended victim and rehearsing the plan . . . and actually bringing the particular murder victim to the planned murder site," were separate acts supporting the various aggravators. *See* Dissent at 1142. Driving the victim to the murder site (intentionally engaging in conduct intending the victim be killed) and driving the victim to the murder site (engaging in conduct which creates a grave risk of death) is still the same conduct. Likewise, driving the victim to the murder site (intentionally engaging in conduct intending the victim be killed) and driving the victim to the murder site (intentionally killing in furtherance of a continuing criminal enterprise) overlap. The same act can be described several ways, but it is still the same act.

As to the effect of duplicative factors, the dissent acknowledges that *Lowenfield*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568, does not directly address this situation. *See* Dissent at 1142. However, unlike the dissent, we cannot conclude that *Lowenfield* lends any support to the contention that duplicative factors are acceptable. First, it should be noted that *Lowenfield* did not involve a "weighing" statute but rather a threshold death-eligibility question, and the only duplication at issue was the duplication of an aggravating factor with an element of the offense itself. *Lowenfield* essentially held that it is constitutional for a state to legislatively define a crime in such a way that an element of the crime is also a threshold aggravating factor, making any defendant convicted of the crime death-eligible. *Id.* at 246, 108 S.Ct. at 555. It is too much of a stretch to say that *Lowenfield* supports the idea that the use of duplicative factors in a weighing statute is acceptable, especially in light of the critical distinction between weighing and nonweighing jurisdictions recognized by the Supreme Court in *Stringer v. Black*, 503 U.S. 222, 231–32, 112 S.Ct. 1130, 1137–38, 117 L.Ed.2d 367 (1992).

It should also be noted that *Flores*, which the dissent endorses, recognized the invalidity of duplicative factors, relying upon *Randolph v. State*, 463 So.2d 186, 193 (Fla.1984) (separate aggravators "committed during the commission of a robbery" and "committed for pecuniary gain" found invalid), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985). The Fifth Circuit explained: "In cases like *Randolph*, the aggravators simply described the same conduct or motive in two

different ways (i.e., a defendant who robs is usually seeking pecuniary gain)," *Flores,* 63 F.3d at 1372, implying that such duplicative factors are indeed invalid.

### B.

■ As to the *Fulminante* issue, unless we are prepared to elevate "form over substance," the defense adequately alerted the trial court to the problem based upon its allegation of "outrageous," i.e. improper, governmental conduct. This is a capital case—failure to say the "magic words" should not result in the affirmance of a death sentence which might not otherwise have been imposed.

■ On the merits, the government ignores the clear language of *Fulminante* and suggests that the key to that case is "the imminency of the threat of physical injury and the lack of means to avoid physical harm." Aplee. Reh'g Petition at 14. However, the Supreme Court language is to the contrary:

> Our cases have made clear that a finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient. As we have said, "coercion can be mental as well as physical, and . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition."

*Fulminante,* 499 U.S. at 287, 111 S.Ct. at 1253 (quoting *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 279–80, 4 L.Ed.2d 242 (1960)). In this case there is no dispute between the parties that the government agent lied to a drug-dependent defendant, stating that he would be killed unless he told the informant what "really happened." This is a classic *Fulminante* situation. Moreover, even under the government's tortured reading of *Fulminante,* there was a threat of immediate physical injury in this case; indeed, McCullah was frightened that the government agent was about to kill him during the very car ride when he confessed. The statements were coerced.

It is ordered as follows:

The defendant's petition for rehearing is denied.

The government's petition for rehearing is denied. In accordance with Fed.R.App.P. 35(b) the government's suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular active service and a vote on the suggestion was taken. The government's suggestion for rehearing en banc is denied for want of a majority. *See* Fed.R.App.P. 35(a).

STEPHEN H. ANDERSON, TACHA, BALDOCK, BRORBY, EBEL and MURPHY, JJ., voted to grant rehearing en banc.

STEPHEN H. ANDERSON, Circuit Judge, dissenting from the denial of the Petition for Rehearing filed by the United States and the denial of rehearing en banc.

The government has filed a petition for rehearing, with en banc suggestion, from our panel opinion in *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996). The petition raises the following issues: (1) whether, under a federal weighing sentencing statute, there was a duplication of aggravating factors, in violation of the constitution or other federal law, when the court submitted to the jury the statutory aggravating factors that the defendant "intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim," 21 U.S.C. § 848(n)(1)(C), and that the defendant "intentionally engaged in conduct which . . . the defendant knew would create a grave risk of death to a person . . . and resulted in the death of the victim," 21 U.S.C. § 848(n)(1)(D), along with the nonstatutory aggravating factor that the defendant committed the offenses charged in the indictment; (2) if there was a duplication, whether such duplication is a violation of the constitution or other federal law; and (3) whether certain inculpatory statements by the defendant were coerced and therefore involuntary under *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). After careful consideration of the government's arguments, and careful reconsideration of our panel opinion, I am convinced that our panel opinion is incorrect. I

would therefore grant the petition for rehearing and affirm the death sentence imposed by the jury.

## BACKGROUND

Appellant John Javilo McCullah was convicted of committing a murder in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e), and he was sentenced to death following a bifurcated penalty hearing. I summarize from the panel opinion the basic facts relevant to this petition.

Joseph "Eddie" Arvizu was the leader of a large California-based cocaine and marijuana trafficking operation. When a pick-up truck containing 100 kilograms of cocaine was stolen from one of the main distributors of the Arvizu organization, members of the organization determined to exact revenge by murdering the suspected thief, Avery Rogers. Mr. McCullah was enlisted to help kidnap and murder Mr. Rogers. The plan required Mr. McCullah to lure Mr. Rogers to an ambush site. The plan went awry, however, when Mr. Rogers refused to accompany Mr. McCullah, and Mr. McCullah brought one of Mr. Rogers' employees, Jewell Leon Collins, to the ambush site where he was murdered.

Several months after this murder, a former member of the Arvizu organization, Gabriel Lozano, began cooperating with the government as an informant. On November 13, 1991, Mr. Lozano and Mr. McCullah had a conversation, secretly taped by Mr. Lozano, in which Mr. McCullah made inculpatory statements about the Collins murder. During this conversation, Mr. Lozano told Mr. McCullah that the Arvizu organization was planning to kill him because of the mix-up in the Collins murder, but offered to intercede on Mr. McCullah's behalf if he—Mr. McCullah—would tell the truth concerning what happened in connection with that murder.

The panel opinion held that Mr. McCullah's statements were coerced: "the threat and offer of protection by Mr. Lozano clearly coerced Mr. McCullah's statements."

*McCullah*, 76 F.3d at 1101. The panel further concluded that, while the statements to Mr. Lozano were harmless error beyond a reasonable doubt in the guilt phase of the trial, they were not harmless in the penalty phase of the trial.

The panel opinion also held that the court erred in submitting duplicative and cumulative aggravating factors to the jury. The district court submitted to the jury the following aggravating factors: (1) the 21 U.S.C. § 848(n)(1)(C) statutory aggravating factor that Mr. McCullah "intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;" (2) the § 848(n)(1)(D) statutory aggravating factor that Mr. McCullah "intentionally engaged in conduct which—(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and (ii) resulted in the death of the victim;" and (3) the non-statutory aggravating factor that Mr. McCullah "committed the offenses as to which he is charged in the indictment."[1] The panel opinion found that § 848(n)(1)(C) and the non-statutory aggravating factor "substantially overlap with one another." *McCullah*, 76 F.3d at 1111. It also held that the § 848(n)(1)(C) and (n)(1)(D) factors "substantially overlap[ ]" and that "[w]hile the factors are not identical per se, the (n)(1)(C) factor necessarily subsumes the (n)(1)(D) factor." *Id.* The panel concluded that "the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors." *Id.* at 1112.

The government's petition argues that the panel's decision on the duplicative aggravating factors and on the coerced statements is wrong.

## DISCUSSION

The government's argument is that: (1) the aggravating factors do not actually over-

---

1. Mr. McCullah was indicted on charges of: (1) committing murder in furtherance of a continuing criminal enterprise; (2) conspiring to possess with intent to distribute and conspiring to distribute in excess of five kilograms of cocaine and 100 kilograms of marijuana; (3) conspiring to travel and traveling in interstate commerce with intent that a murder-for-hire be committed.

lap as applied to Mr. McCullah's conduct and mental state, and even if they conceptually overlap to some degree, such conceptual overlap is permissible under *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), and *United States v. Flores,* 63 F.3d 1342 (5th Cir.1995), *petition for cert. filed,* (U.S. March 14, 1996) (No. 95–8346); and (2) to the extent the aggravating factors are duplicative or overlapping, they did not invalidate the jury's sentence. Mr. McCullah responds that all of the relevant aggravating factors—the (n)(1)(C) intent to kill factor, the (n)(1)(D) knowledge of grave risk of death factor, and the non-statutory committed the offenses charged factor—involve the "same core aggravating concept—a homicide committed with a culpable mental state." Appellant's Resp. to Gov't's Pet. for Reh'g at 6. In the weighing process mandated by § 848, Mr. McCullah asserts that this triple weight accorded the same core concept unfairly enhanced the weight of the aggravating factors.[2]

### 1. *Are the Aggravating Factors Duplicative?*

The government argues that Mr. McCullah, along with two of his codefendants, "engaged in various preparatory activities which, the jury evidently found, were intended to create a grave risk of death to an innocent person" under § 848(n)(1)(D), but that Mr. McCullah alone "played a decisive role in the series of events that directly culminated in Collins' death." Appellee's Pet. for Reh'g at 8–9.[3] Among these latter activities were Mr. McCullah's identification of Collins and his transportation of Collins to the murder site, from which conduct, the government argues, the jury evidently concluded that Mr. McCullah intentionally engaged in conduct intending that the victim be killed or that lethal

force be used under § 848(n)(1)(C). Thus, the two statutory aggravating factors addressed different conduct by Mr. McCullah and different mental states.

Similarly, the government argues there was no overlap in the district court's submission of the (n)(1)(C) statutory aggravator—intentionally engaging in conduct intending that the victim be killed—along with the non-statutory aggravator that he committed the offenses charged in the indictment. The government argues that the latter non-statutory aggravating factor permits the jury to consider all the circumstances surrounding the offense, not just the narrow issue of Mr. McCullah's mental state when the murder was committed. The government therefore contends it is much broader than the (n)(1)(C) intent to kill statutory aggravating circumstance.

The government urges us to adopt the reasoning of the Fifth Circuit in *Flores.* In *Flores,* the defendant personally murdered one victim, and hired others to murder two other victims. With respect to two of the murders, the jury found that the defendant intentionally killed the victims under § 848(n)(1)(A), and that he "intentionally engaged in conduct intending that the victims be killed or that lethal force be employed against the victims, which resulted in the death of the victims" under § 848(n)(1)(C). *Flores,* 63 F.3d at 1372. The court rejected the defendant's argument that those findings violated a claimed prohibition on the use of duplicative aggravators, stating:

> [I]ntentionally killing and intentionally engaging in conduct intending that the victim be killed are not necessarily identical conduct. A defendant who personally murders a victim has a different mental state than one who pays others to kill. Similar-

---

2. Mr. McCullah also argues that, because of intervening legislation which he believes supersedes § 848 and its sentencing scheme, the panel's ruling will have little impact on subsequent cases. He does concede that the issue is nonetheless "of intense interest to those immediately involved with this case." Appellant's Resp. to Gov't's Pet. for Reh'g at 2–3. Any error in our panel opinion makes this case appropriate for en banc review.

3. In closing arguments to the jury in the penalty phase of the trial, the state described Mr. McCullah's activities the day before the murder when he met with and took a test drive with the intended victim, Mr. Rogers, as well as his conduct in taking the actual victim, Mr. Collins, to the murder site. "This man, this man right here, John Javilo McCullah, more than any other, is responsible for the death of Jewell Leon Collins because he is the only one that knew of a coming death and could have stopped it." R. Vol. 39 at 302.

ly, a defendant who personally kills and hires others to assist him during the killing has more than one blameworthy intention. Although the ultimate goal is the same— the victim's death—the defendant's intentions as to how he will achieve that goal are not singular. It is not irrational for Congress to decide that a defendant with such dual intent should be treated as more deserving of death than a defendant with only one.

*Id.*

In my view, the same reasoning can apply to the two statutory aggravators presented to the jury in this case. Intentionally engaging in conduct intending that the victim be killed and intentionally engaging in conduct which creates a grave risk of death are not necessarily identical conduct nor do they necessarily involve the same mental state. Engaging in preparatory activities such as scouting the intended victim and rehearsing the plan which the defendant anticipates will result in the victim's death, and actually bringing the particular murder victim to the planned murder site and turning him over to his killer, are not identical conduct nor do they involve identical intent, "[a]lthough the ultimate goal is the same." *Id.;*[4] *see also, e.g., Larzelere v. State,* 676 So.2d 394, 406 (Fla.1996) ("[T]he facts in a given case may support multiple aggravating factors provided the factors are not based on the same essential feature of the crime."); *State v. Conaway,* 339 N.C. 487, 453 S.E.2d 824, 851 ("[W]here there is separate substantial evidence to support each aggravating circumstance, it is not improper for each aggravating circumstance to be submitted even though the evidence supporting each may overlap."), *cert. denied,* —— U.S. ——, 116 S.Ct. 223, 133 L.Ed.2d 153 (1995); *McCracken v. State,* 887 P.2d 323, 331 (Okla.Crim. App.) (holding there was no duplication where "[e]ach of the aggravating circumstances is supported by different evidence"), *cert. denied,* —— U.S. ——, 116 S.Ct. 166, 133

L.Ed.2d 108 (1995); *cf. State v. Wogenstahl,* 75 Ohio St.3d 344, 662 N.E.2d 311, 329 (1996) (holding that " 'where two or more aggravating circumstances arise from the same act or indivisible course of conduct and are thus duplicative, the duplicative aggravating circumstances will be merged for purposes of sentencing' ") (quoting *State v. Jenkins,* 15 Ohio St.3d 164, 473 N.E.2d 264, 296–97 (1984)).

For similar reasons, I disagree with the panel opinion's conclusion that the district court erred in submitting to the jury both the statutory aggravating circumstance that Mr. McCullah "intentionally engaged in conduct intending that the victim be killed," § 848(n)(1)(C), and the non-statutory aggravating factor that Mr. McCullah "committed the offenses as to which he is charged in the indictment." As the government points out, Mr. McCullah was charged with multiple offenses, one of which was the commission of murder. The jury was entitled to consider the whole circumstance of the crime, which is what the non-statutory aggravator was intended to permit it to do. *See Tuilaepa v. California,* —— U.S. ——, ——, 114 S.Ct. 2630, 2637, 129 L.Ed.2d 750 (1994); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

### 2. *If the Aggravating Factors are Partially or Wholly Duplicative, does that Invalidate the Sentence?*

The government argues that, even if the aggravators presented to the jury partially or wholly overlapped, no Eighth Amendment violation, or other violation of federal law, occurred. I agree with the government that *Lowenfield,* while not *directly* addressing this argument, certainly supports it.

In *Lowenfield,* the defendant was found guilty of three counts of first-degree murder, an essential element of which was that he intended " 'to kill or inflict great bodily harm

---

4. Although there were multiple victims in *Flores,* the jury found, with respect to two of the victims, that the defendant intentionally killed under § 848(n)(1)(A) and that he intentionally engaged in conduct intending that the victims be killed under § 848(n)(1)(C). *Flores,* 63 F.3d at 1366.

Thus, the *Flores* court's discussion of different mental states and conduct is not distinguishable from this case on the ground that different victims were involved. Rather, as here, the two statutory aggravators were found to exist with respect to the same victims.

on more than one person.'" *Lowenfield,* 484 U.S. at 233, 108 S.Ct. at 549 (quoting La.Rev. Stat.Ann. § 14:30A(3)). The only aggravating circumstance found by the jury was that the defendant " 'knowingly created a risk of death or great bodily harm to more than one person.'" *Id.* at 243, 108 S.Ct. at 554 (quoting La.Code Crim.Proc.Ann., Art. 905.4(d)). Thus, the only aggravating circumstance found duplicated an essential element of the crime itself.

The Supreme Court concluded that such duplication did not violate the Eighth Amendment, observing that "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion." *Id.* at 244, 108 S.Ct. at 554. Such narrowing may be accomplished "by jury findings at either the sentencing phase of the trial or the guilt phase." *Id.* at 245, 108 S.Ct. at 554. Since the requisite narrowing was accomplished under the Louisiana statutory scheme in *Lowenfield* by the legislature's narrow definition of the categories of murder for which the death penalty could be imposed, "[t]he fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm." *Id.* at 246, 108 S.Ct. at 555. *Lowenfield* therefore holds that an aggravating factor which is duplicative—in that case, duplicative of an element of the crime, found in the guilt-innocence phase of the trial—is not invalid.

Mr. McCullah argues that *Lowenfield* is inapplicable because it did not involve allegedly duplicative aggravators in a weighing sentencing scheme, whereby the jury weighs the aggravating and mitigating circumstances, as the jury must in sentencing under § 848. He argues that *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), held that *Lowenfield* is inapplicable in a weighing case. I disagree.

*Stringer* involved the effect of an *invalid* aggravating factor on a sentence imposed in a weighing jurisdiction. The Court acknowledged that "the difference between a weighing State and a nonweighing State is not one of 'semantics,' . . . but of critical importance." *Id.* at 231–32, 112 S.Ct. at 1137. "[W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence." *Id.* at 232, 112 S.Ct. at 1137.

In this case, there is no *invalid* factor. *Lowenfield* makes that clear. Thus, the jury was not permitted to consider something which it should not have considered at all. Rather, there are aggravating factors which arguably overlap to some degree. *Stringer* does not address the issue of duplicative or overlapping aggravators. *See Johnson v. Singletary,* 991 F.2d 663, 669 (11th Cir.) ("*Stringer* stands for the proposition that if Johnson's jury had considered an invalid aggravating factor, we must assume that that factor affected their weighing process."), *cert. denied,* 508 U.S. 901, 113 S.Ct. 2049, 124 L.Ed.2d 70 (1993); *see also United States v. Bradley,* 880 F.Supp. 271, 289 (M.D.Pa.1994) ("*Stringer* addressed the use of *invalid* factors in the weighing process, not the use of *duplicative* factors."). Accordingly, *Stringer* does not make *Lowenfield*'s analysis inapplicable here. And *Lowenfield* suggests that a duplicative aggravating factor need not invalidate a sentence.

I therefore agree with the Fifth Circuit in *Flores* that, while the four statutory aggravating factors in § 848(n)(1) all address the defendant's mental state, it is not necessarily unconstitutional or otherwise a violation of the statute to submit two of them to a jury imposing sentence on a defendant, because they can involve different conduct and mental states, as they did in this case. They are not *inherently* and *always* duplicative. And even if they are duplicative, duplicative aggravators are not necessarily *invalid* aggra-

vators requiring reversal of the sentence under *Stringer*.

Finally, even assuming the duplication was error, I agree with the Eleventh Circuit's observation in *United States v. Chandler*, 996 F.2d 1073, 1093 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994), that any concern that the jury would be "influenced in its weighing process by the number of aggravating factors" is alleviated by appropriate instructions making clear "that the weighing process was not a mechanical one and that different factors could be given different weight." Such an instruction was given in this case:

> In carefully weighing the various factors at issue in this case, you are called upon to make a unique, individualized judgment about the appropriateness of sentencing the defendant to death. This is not a mechanical process, neither is it determined by raw numbers. You do not simply count factors. Instead, you must consider the quality of the factors.
>
> . . . .
>
> In short, what is called for in weighing the various factors is not mathematical skills, but your careful, considered and mature judgment. At this final, weighing stage in the process, you are not called upon simply to find relevant factors. You are called upon to decide whether the defendant shall live or die.

R. Vol. 39 at 346; *see also Bradley*, 880 F.Supp. at 289 n. 8 (noting that a curative instruction might countervail "any unfairness inherent in the weighing of a duplicative factor").[5] A reasonable juror would not simply and mechanically add up the number of aggravating factors, and balance them against the number of mitigating factors. Rather, a reasonable juror would critically evaluate the quality of the aggravating circumstances, and give each an appropriate weight under the circumstances. *See California v. Brown*, 479 U.S. 538, 542–43, 107 S.Ct. 837, 839–40, 93 L.Ed.2d 934 (1987) (holding that a reasonable juror would interpret anti-sympathy instruction in a way that permitted him to consider all the evidence presented); *Parsons v. Barnes*, 871 P.2d 516, 528–30 (Utah) (finding no prejudice to defendant from improper double-counting of aggravators where the jury was instructed *"not in terms of the relative numbers* of the aggravating and mitigating factors, but in terms of their respective *substantiality and persuasiveness"*), *cert. denied*, —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). I would therefore affirm the sentence of death imposed in this case.

### 3. *Mr. McCullah's Confession:*

With respect to the coerced confession issue, Mr. McCullah argues that the highly fact-bound nature of that issue makes it a poor candidate for en banc review. The gov-

---

5. Ordinarily, when the submission of an aggravating factor to the jury is determined to be error, either appellate reweighing of the aggravating and mitigating factors or a harmless error analysis may permit the appellate court to affirm the sentence. *See Clemons v. Mississippi*, 494 U.S. 738, 748–49, 752–54 110 S.Ct. 1441, 14484–51, 1450–51, 108 L.Ed.2d 725 (1990). Mr. McCullah argues that such appellate reweighing or harmless error analysis is unavailable in § 848 cases, because § 848(q), concerning appellate review, provides in pertinent part:

> (3) The court shall affirm the sentence if it determines that—
>  (A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and
>  (B) the information supports the special finding of the existence of every aggravating factor upon which the sentence was based, together with, or the failure to find, any mitigating factors set forth or allowed in this section.

> In all other cases the court shall remand the case for reconsideration under this section. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence.

21 U.S.C. § 848(q)(3) (emphasis added). The government responds that nothing in the statute suggests that the ordinary harmless error rule of Fed.R.Crim.P. 52 has no application to cases arising under the statute.

I agree with Mr. McCullah that the statute unambiguously requires us to remand if we cannot affirm the sentence imposed. As the Supreme Court stated in *Clemons*, nothing in its opinion in *Clemons* should be interpreted as *compelling* appellate courts to reweigh or conduct a harmless-error analysis. The Court has simply held that "such procedures are constitutionally permissible." *Clemons*, 494 U.S. at 754, 110 S.Ct. at 1451. Because I conclude no error occurred in the determination of the sentence, I would of course not remand the case for reconsideration.

ernment argues the panel opinion erred in concluding that Mr. McCullah's statements to Mr. Lozano were involuntary under *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), where the threat of physical harm was not imminent and Mr. McCullah had means available to him to avoid the risk of harm. The government also urges us to find that Mr. McCullah waived this argument, because he only sought suppression, or a ruling of inadmissability, before the district court on the ground that his statements were made while under the influence of heroin, and that the government's conduct was "outrageous." *See* R. Vol. 3, Tabs 372, 373. He did not assert that the confession was coerced and involuntary because of the threats of harm and promise of protection by Mr. Lozano.

The panel opinion held that Mr. McCullah raised this issue "adequately, if ineloquently, ... by [his] allegation of 'outrageous' conduct." *McCullah,* 76 F.3d at 1100. Having carefully reviewed the record in this case, I cannot agree that Mr. McCullah raised this issue, even ineloquently. He never cited *Fulminante,* the case upon which he now relies exclusively, nor did he ever argue that the involuntariness stemmed from Mr. Lozano's statements. A broad allegation of "outrageous" governmental conduct is insufficient to alert the court of the nature of the argument he now makes on appeal.

Furthermore, the district court's order on Mr. McCullah's motion to suppress, or prevent the admission of, evidence relating to the confession makes it clear that the issue of coercion was not raised below. The panel opinion justified its consideration of this issue in part because "[t]he trial court treated the two grounds [intoxication and governmental conduct] as distinct and addressed them separately." *Id.* However, as with Mr. McCullah's pleadings, nowhere did the court cite *Fulminante* or discuss any coercion resulting from Mr. Lozano's statements. It also ad-

dressed the "outrageous" conduct claim only in very general terms:

> [T]he court finds nothing improper about the government's conduct in the method or means used in obtaining these statements from these defendants. Wide latitude is given to the government in investigating criminals and bringing them to justice. Certainly, the government agents' conduct in obtaining these statements is not so egregious or outrageous as to rise to the level of a due process claim.

R. Vol. 3, Tab 390, at 6–7 (Order) (citations omitted).

Indeed, a critical factual issue in any analysis of the voluntariness of Mr. McCullah's confession is what exactly he said in his taped conversation with Mr. Lozano, and what Mr. Lozano said to him. The district court listened to the tapes, which were not played for the jury, but made no specific findings as to the content of the conversation, other than that

> they [Mr. Lozano and Mr. McCullah] rode around in the Porsche and talked about the other defendants, drug dealings, and the killing in Oklahoma which are the subjects of the indictment in this case. Lozano told defendant McCullah that he had heard that defendant McCullah was in trouble with defendant Eddie Arvizu because he, defendant McCullah, had botched the Oklahoma killing by killing the wrong person. Defendant McCullah indicated that he would go back to Oklahoma and kill the right person by himself.

*Id.* at 4. This further highlights the fact that the district court did not have before it the issue of whether Mr. McCullah's confession was coerced because of Mr. Lozano's threats and promises. The court made no findings relevant to that issue.

Finally, I have supplemented the record on appeal with the actual tapes of the conversation between Mr. Lozano and Mr. McCullah.[6]

---

6. As indicated, the tapes were not played for the jury. The district court's order denying Mr. McCullah's motion in limine stated that the tapes were "introduced." Mr. McCullah refers to them in his Appendix as an Exhibit, and they were listed as such in other materials in the record, but it is not clear whether they were ever actually introduced and admitted into evidence. At trial, the court made the government choose between playing the tapes themselves for the jury and having Mr. Lozano testify as to their contents. The government elected to have Mr. Lozano testify. Thus, only the court listened to the

My review of the tapes explains why the issue of coercion was never raised below: the tapes simply fail to support the argument that Mr. McCullah's confession was coerced.

For the foregoing reasons, I would grant the government's petition for rehearing in this case and AFFIRM the death sentence imposed by the jury.

TACHA and BRORBY, JJ., join in this dissent.

actual tapes, prior to ruling on the defendants'   motions to suppress.