# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-3941

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GERKE EXCAVATING, INC.,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-0074-C—**Barbara B. Crabb**, *Chief Judge*.

_____

ARGUED MAY 9, 2005—DECIDED JUNE 21, 2005

_____

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. This suit charges that the defendant violated the Clean Water Act by discharging pollutants into navigable waters from "point sources" without the permit from the Corps of Engineers that is required when the pollutant consists of dredge or fill material (otherwise the permit must be sought from the EPA or, in some cases, a state). 33 U.S.C. §§ 1311(a), 1362(12). The district judge granted summary judgment for the government and imposed a civil penalty of $55,000 on the defendant.

The Clean Water Act defines "navigable waters" as "waters of the United States." *Id.* § 1362(7). A regulation

defines the latter term to include not only waters "susceptible to use in interstate or foreign commerce," which are "navigable waters" in the usual sense, but also tributaries of such waters and—of particular pertinence to this case—"wetlands adjacent to" such waters *or to such tributaries*. 33 C.F.R. §§ 328.3(a)(1), (5), (7). (That is the Corps' regulation; the EPA's, 40 C.F.R. §§ 230.3(s)(1), (5), (7), is identical.)

The defendant dumped dredged stumps and roots, plus sand-based fill (all conceded to be pollutants within the meaning of the Act, 33 U.S.C. § 1362(6); *Borden Ranch Partnership v. U.S. Army Corps of Engineers*, 261 F.3d 810, 814-15 (9th Cir. 2001); *United States v. Deaton*, 209 F.3d 331, 335 (4th Cir. 2000); *Driscoll v. Adams*, 181 F.3d 1285, 1291 (11th Cir. 1999)), into a patch of what it concedes are wetlands within the meaning of the regulation. It also concedes that the means of the dumping—bulldozers and dump trucks—are "point sources." 33 U.S.C. § 1362(14); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004); *Borden Ranch Partnership v. U.S. Army Corps of Engineers, supra*, 261 F.3d at 815; *United States v. Pozsgai*, 999 F.2d 719, 726 n. 6 (3d Cir. 1993); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 922 (5th Cir. 1983).

Located on a 5.8 acre tract near Tomah, Wisconsin, that the owner wanted to develop, the wetlands are drained by a ditch that runs into a nonnavigable creek that runs into the nonnavigable Lemonweir River which in turn runs into the Wisconsin River, which is navigable. The Lemonweir River is thus a tributary of a navigable river, but are the wetlands "adjacent" to the Lemonweir? They are connected to it in the sense that water from the wetlands flows into the river, but they might be thought "adjacent" not to the river but merely to the ditch, and a ditch is not what one would ordinarily understand as a "tributary." The Wisconsin

River, because it flows into the Mississippi, is connected to the Gulf of Mexico, but it would be odd to describe it as "adjacent" to the gulf.

Gerke, however, does not argue that the regulation is inapplicable to this case, and would not get far with the argument because of how the regulation has been interpreted—as treating a ditch connected to a tributary of a navigable waterway as a tributary of a tributary, e.g., *Carabell v. U.S. Army Corps of Engineers*, 391 F.3d 704, 708-09 (6th Cir. 2004); *United States v. Deaton*, 332 F.3d 698, 704 (4th Cir. 2003), just as the Lemonweir River itself is a tributary of a tributary of the Mississippi River. A stream can be a tributary; why not a ditch? A ditch can carry as much water as a stream, or more; many streams are tiny. It wouldn't make much sense to interpret the regulation as distinguishing between a stream and its manmade counterpart.

Gerke argues instead that the regulation exceeds the authority granted the Corps of Engineers by the Clean Water Act because the wetlands are not "waters of the United States," or, if the regulation is within the congressional grant of authority, then it exceeds the authority that the commerce clause of the Constitution grants Congress. The arguments are interchangeable, since the only reason Gerke gives to doubt the validity of the regulation is the principle that the meaning of a statute or a regulation can be stretched where that is necessary to avoid its being held unconstitutional. The idea here would be that the Corps of Engineers would prefer a bobtailed regulation to none if that is the choice forced on it by the Constitution.

Congress can regulate waterways used to transport people and goods in interstate or foreign commerce. *Kaiser Aetna v. United States*, 444 U.S. 164, 173-74 (1979); *United States v. Rands*, 389 U.S. 121, 122-23 (1967); *Gilman v. City of*

*Philadelphia*, 70 U.S. (3 Wall.) 713, 724-25 (1865); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 189-97 (1824). Those are the waterways that the term "navigable waters" conventionally denotes (though a river could be navigable even though it was entirely within one state). The Wisconsin River, not to mention the Mississippi River into which it flows, is a navigable waterway in the conventional sense. The most elementary type of federal regulation of such waterways that the commerce clause authorizes is regulation aimed at making sure they remain navigable, in the sense of usable in interstate or foreign commerce, rather than allowing them to become obstructed by low-lying bridges, *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518 (1852), or to become too shallow for navigation by large vessels because the sources of their water are being diminished by dams, silting, or real estate development. There are believed to be more than 100 million acres of wetlands in the lower 48 states, Thomas E. Dahl, "Status and Trends of Wetlands in the Conterminous United States 1986 to 1997" 9 (U.S. Fish & Wildlife Service 2000), and they supply some of the water in navigable waterways. Ralph W. Tiner, "Correlating Enhanced National Wetlands Inventory Data with Wetland Functions for Watershed Assessments: A Rationale for Northeastern U.S. Wetlands" 6-7 (U.S. Fish & Wildlife Service 2003). Also, by temporarily storing storm water, wetlands reduce flooding, which can interfere with navigation. Office of Technology Assessment, U.S. Congress, "Wetlands: Their Use and Regulation" 43-47 (1984).

Obviously, filling in a 5.8 acre tract (not all of it wet-lands—we do not know how much of it is) is not going to have a measurable effect on the depth of the Wisconsin or Mississippi Rivers. But that cannot be the test. The sum of many small interferences with commerce can be large, and so to protect commerce Congress must be able to regulate an

entire class of acts if the class affects commerce, even if no individual act has a perceptible effect. See, e.g., *Gonzales v. Raich*, 125 S. Ct. 2195, 2205-07 (2005); *Wickard v. Fillburn*, 317 U.S. 111, 118-29 (1942); *United States v. Hicks*, 106 F.3d 187, 188-90 (7th Cir. 1997); *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997), and, with specific reference to the regulation of navigable waters, *United States v. Deaton*, *supra*, 332 F.3d at 706-07; cf. *Oklahoma ex rel. Phillips v. Guy F. Atkinson Co.*, 313 U.S. 508, 525-26 (1941).

Congress's power to regulate commerce is not limited to removing obstructions; otherwise it could not forbid trafficking in controlled substances, a program designed to reduce a form of commerce. Congress may forbid the pollution of navigable waters even if the pollution has no effect on navigability, which is the usual case, though we've found a couple of cases in which pollution did impede navigability. *Kernan v. American Dredging Co.*, 355 U.S. 426, 427-28 (1958); *United States v. Ashland Oil & Transportation Co.*, 504 F.2d 1317, 1326 (6th Cir. 1974). In fact navigability is a red herring from the standpoint of constitutionality. The power of Congress to regulate pollution is not limited to polluted navigable waters; the pollution of groundwater, for example, is regulated by federal law, e.g., 42 U.S.C. §§ 300h, 6949a(c), 9621(d)(2)(B)(ii), because of its effects on agriculture and other industries whose output is shipped across state lines, and such regulation has been held to be authorized by the commerce clause. *Freier v. Westinghouse Electric Corp.*, 303 F.3d 176, 202-03 (2d Cir. 2002); *United States v. Olin Corp.*, 107 F.3d 1506, 1510-11 (11th Cir. 1997); cf. *Allied Local & Regional Mfrs. Caucus v. United States EPA*, 215 F.3d 61, 81-83 (D.C. Cir. 2000). In *Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 964-66 (7th Cir. 1994), we noted that in excluding groundwater from the definition of

"waters of the United States," Congress in the Clean Water Act had declined to exercise its constitutional power to the utmost.

So it doesn't matter whether the objection to allowing the Gerkes of this world to dry out wetlands is that the effect may be to reduce water levels in navigable waterways to the point at which navigation would be affected or that the effect may be to increase the level of pollution in such waters by reducing the supply of unpolluted wetlands water. Nothing in the Constitution forbids interpreting the Clean Water Act to cover any wetlands that are connected to navigable waters. Whether the wetlands are 100 miles from a navigable waterway or 6 feet, if water from the wetlands enters a stream that flows into the navigable waterway, the wetlands are "waters of the United States" within the meaning of the Act. *United States v. Rapanos*, 339 F.3d 447, 450-53 (6th Cir. 2003); *United States v. Deaton*, *supra*, 332 F.3d at 704-12.

Gerke argues that the wetlands of the United States are so extensive that the Corps' interpretation will tilt the balance between federal and state power too far in the direction of the federal government. *In re Needham*, 354 F.3d 340, 344-46 (5th Cir. 2003); see also *Rice v. Harken Exploration Co.*, 250 F.3d 264, 267-69 (5th Cir. 2001). Gerke reminds us of recent decisions by the Supreme Court which hold that the commerce power is not plenary, such as *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Lopez*, 514 U.S. 549 (1995). The argument, however, is two-edged. The more extensive a wetlands, the greater its potential importance as a source of water to keep the navigable waterways full and clean.

Granted, a wetlands could be extensive yet not be a source of water for navigable waterways. In a decision about

wetlands that are isolated from navigable waterways, the Supreme Court held in *Solid Waste Agency of Northern Cook County (SWANCC) v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001), that such wetlands are not "waters of the United States." Gerke fastens on the sentence in the opinion that states that the Clean Water Act does not extend "to ponds that are *not* adjacent to open water." *Id.* at 168 (emphasis in original). It is dangerous, however, to take judicial language out of context; the case was about a pond that was completely isolated from any navigable waterway, tributary, etc. As we noted in *United States v. Rueth Development Co.*, 335 F.3d 598, 603-04 (7th Cir. 2003), *SWANCC* did not overrule *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985), which had held that a wetlands that actually abutted a navigable waterway was constitutionally regulable. It cannot make any difference if instead of abutting, the wetlands is connected to the waterway by a pipe two feet long. Even taken out of context, the sentence Gerke fastens on doesn't do the work it thinks it does. For "adjacent" can just mean "connected," and "open water" can just mean water that is part of the waters of the United States because it flows into navigable waterways.

AFFIRMED.

A true Copy:

       Teste:

                                 _____

                                 *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*