In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-3941

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GERKE EXCAVATING, INC.,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-0074-C—**Barbara B. Crabb**, *Chief Judge*.

_____

On Remand From the
Supreme Court of the United States

_____

SEPTEMBER 22, 2006

_____

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges*.

PER CURIAM. This suit charges that the defendant, Gerke Excavating, violated the Clean Water Act by discharging pollutants into "navigable waters" from "point sources" without having obtained the permit from the Corps of Engineers that is required if the pollutant consists of dredge or fill material. 33 U.S.C. §§ 1311(a), 1362(12). The district judge granted summary judgment for the government and imposed a civil penalty. We affirmed. 412 F.3d 804 (7th Cir.

2005). Gerke filed a petition for certiorari. The Court granted the petition, 126 S. Ct. 2964 (2006), and remanded the case to us for further consideration in light of *Rapanos v. United States*, 126 S. Ct. 2208 (2006), where the Court reversed two judgments by the Sixth Circuit upholding federal authority over wetlands, as had we.

There was, however, no majority opinion in *Rapanos*. Four Justices, in an opinion supporting reversal, wanted to limit federal authority over "navigable waters" to "those wetlands with a continuous surface connection to bodies that are 'waters of the United States' in their own right, so that there is no clear demarcation between 'waters' and wetlands, are 'adjacent to' such waters and covered by the [Clean Water Act]. Wetlands with only an intermittent, physically remote hydrologic connection to 'waters of the United States' . . . thus lack the necessary connection to covered waters that we described as a 'significant nexus.' Thus, establishing that wetlands such as those at the Rapanos and Carabell sites are covered by the Act requires two findings: First, that the adjacent channel contains a 'wate[r] of the United States,' (*i.e.,* a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id*. at 1226-27 (citations omitted).

Justice Kennedy concurred in the judgment to reverse but not in the plurality opinion. The four dissenting Justices took a much broader view of federal authority; Justice Kennedy criticized them as well as criticizing the plurality.

When a majority of the Supreme Court agrees only on the outcome of a case and not on the ground for that outcome, lower-court judges are to follow the narrowest ground to

which a majority of the Justices would have assented if forced to choose. *Marks v. United States*, 430 U.S. 188, 193 (1977). In *Rapanos*, that is Justice Kennedy's ground.

The plurality Justices thought that Justice Kennedy's ground for reversing was narrower than their own, because they concluded their extensive and in places harsh criticism of the concurrence by saying that "Justice KENNEDY tips a wink at the agency [i.e., the Corps of Engineers], inviting it to try its same expansive reading again." 126 S. Ct. at 2234 n. 15. Justice Kennedy expressly rejected two "limitations" imposed by the plurality on federal authority over wetlands under the Clean Water Act, one being the requirement of a "continuous surface connection" between the wetland and the conventional waterway that it abuts. *Id*. at 2242 (concurring opinion). He accused the majority of being "unduly dismissive of the interests asserted by the United States in these cases. Important public interests are served by the Clean Water Act in general and by the protection of wetlands in particular." *Id*. at 2246.

The test he proposed is that "wetlands possess the requisite nexus, and thus come within the statutory phrase 'navigable waters,' if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.' When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term 'navigable waters.' " *Id*. at 2248. This test is narrower (so far as reining in federal authority is concerned) than the plurality's in most cases, though not in all because Justice Kennedy also said that "by saying the Act covers wetlands (however remote) possessing a surface-water connection with a

continuously flowing stream (however small), the plurality's reading would permit applications of the statute as far from traditional federal authority as are the waters it deems beyond the statute's reach." *Id*. at 2246.

Thus, any conclusion that Justice Kennedy reaches in favor of federal authority over wetlands in a future case will command the support of five Justices (himself plus the four dissenters), and in *most* cases in which he concludes that there is no federal authority he will command five votes (himself plus the four Justices in the *Rapanos* plurality), the exception being a case in which he would vote against federal authority only to be outvoted 8-to-1 (the four dissenting Justices plus the members of the *Rapanos* plurality) because there was a slight surface hydrological connection. The plurality's insistence that the issue of federal authority be governed by strict rules will on occasion align the Justices in the plurality with the *Rapanos* dissenters when the balancing approach of Justice Kennedy favors the landowner. But that will be a rare case, so as a practical matter the Kennedy concurrence is the least common denominator (always, when his view favors federal authority).

Justice Kennedy's proposed standard, which we conclude must govern the further stages of this litigation, requires factfinding not yet undertaken by the district court. We therefore remand the case to that court for such further proceedings as may be necessary to apply the standard.

REMANDED WITH DIRECTIONS.

No. 04-3941 5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*