[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-17019

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-199-CR-2-RBP

UNITED STATES OF AMERICA

Plaintiff-Appellee,
Cross-Appellant,

versus

CHARLES BARRY ROBISON,

Defendant,

McWANE, INC.,

Defendant-Appellant,

JAMES DELK, MICHAEL DEVINE,

Defendants-Appellants,
Cross-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

ON PETITION FOR REHEARING EN BANC

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.[*]

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

/s/ J.L. Edmondson

_____
CHIEF JUDGE

---

[*]Judge William H. Pryor, Jr., has recused himself and did not participate.

WILSON, Circuit Judge, dissenting from the denial of rehearing en banc, in which BARKETT, Circuit Judge, joins:

The panel in this case vacated the defendants' convictions for conspiracy and for substantive violations of the Clean Water Act ("the Act" or "CWA"), holding that the jury charge was inconsistent with the Supreme Court's intervening decision in *Rapanos v. United States*, 547 U.S. 715, 126 S. Ct. 2208, 165 L. Ed. 2d 159 (2006). *Rapanos* was a 4-1-4 decision in which the plurality and Justice Kennedy set forth different standards for determining whether a water is within the scope of the Act. The panel held that Justice Kennedy's opinion provides the sole controlling standard, notwithstanding that the four *Rapanos* dissenters would uphold federal jurisdiction in cases where either test is satisfied.

In my view, the panel's decision cannot be reconciled with Supreme Court and Eleventh Circuit precedents addressing the proper application of fractured Supreme Court decisions. Moreover, the decision fails as a matter of common sense, as it gives no legal effect to a standard under which eight Justices would find CWA jurisdiction. This error is one of exceptional importance, implicating both the jurisdictional scope of the CWA and the interpretation of fragmented decisions generally. Accordingly, I would grant the United States' petition for rehearing en banc.

3

# I. BACKGROUND[1]

The CWA prohibits the discharge of pollutants into "navigable waters," 33 U.S.C. §§ 1311(a), 1362(12), which are defined to mean "the waters of the United States, including the territorial seas," *id.* § 1362(7). The defendants were prosecuted for conspiracy to violate the CWA and for several substantive CWA violations arising out of the discharge of pollutants into Avondale Creek, a stream that indirectly feeds into the Black Warrior River. Relying on our decision in *United States v. Eidson*, 108 F.3d 1336 (11th Cir. 1997), the district court instructed the jury that a "water of the United States" includes any stream— whether it flows continuously or only intermittently—that may eventually flow into a navigable stream or river. The jury returned guilty verdicts against the defendants.

Following the defendants' convictions, the Supreme Court issued its *Rapanos* decision. *Rapanos* involved two consolidated cases in which the Court construed the terms "navigable waters" and "the waters of the United States" in relation to wetlands located near ditches or drains that eventually emptied into traditional navigable waters. *See Rapanos*, 547 U.S. at 729, 126 S. Ct. at 2219 (plurality opinion). The Court remanded the cases for consideration of whether

---

[1] The factual background and procedural history are set forth in greater detail in the panel opinion. *See United States v. Robison*, 505 F.3d 1208, 1211-14 (11th Cir. 2007).

the wetlands at issue fell within the scope of CWA jurisdiction. However, the five Justices comprising the majority were divided as to the proper standard to be applied in making that determination. Writing for a four-Justice plurality, Justice Scalia construed the term "the waters of the United States" to include only "relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers, [and] lakes." *Id.* at 739, 126 S. Ct. at 2225 (alterations in original) (citation omitted). In the plurality's view, a wetland must have a "continuous surface connection" to such a water body in order to be covered by the Act. *Id.* at 742, 126 S. Ct. at 2226.

In a separate concurrence, Justice Kennedy concluded that a different standard is applicable. According to Justice Kennedy, a water or wetland is within the scope of CWA jurisdiction if it "possess[es] a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id.* at 759, 126 S. Ct. at 2236 (Kennedy, J., concurring) (citing *Solid Waste Agency of N. Cook County v. Army Corps of Engineers*, 531 U.S. 159, 167, 172, 121 S. Ct. 675, 148 L. Ed. 2d 576 (2001)). In Justice Kennedy's view, wetlands meet this "significant nexus" test if, "either alone or in combination with similarly situated lands in the region, [they] significantly affect the chemical, physical, and biological integrity

of other covered waters more readily understood as 'navigable.'" *Id.* at 780, 126 S. Ct. at 2248.

Justice Stevens dissented in an opinion joined by three other Justices. The dissenters would have deferred to the Army Corps of Engineers' interpretation of the Act as encompassing the wetlands at issue. *Id.* at 788, 126 S. Ct. at 2252 (Stevens, J., dissenting). The dissent specifically noted that all four Justices who joined in the opinion would uphold CWA jurisdiction "in all other cases in which either the plurality's or Justice Kennedy's test is satisfied." *Id.* at 810, 126 S. Ct. at 2265. The dissent further indicated that, although Justice Kennedy's standard likely would be controlling in most cases, "in the unlikely event that the plurality's test is met but Justice Kennedy's is not, courts should also uphold the Corps' jurisdiction." *Id.* at 810 n.14, 126 S. Ct. at 2265 n.14.

The defendants in this case argued on appeal that the district court's jury instruction was erroneous in light of *Rapanos* and that Avondale Creek is not a "navigable water" within the meaning of the CWA. The panel noted that there is a circuit split over which *Rapanos* opinion provides the controlling definition of that term. *United States v. Robison*, 505 F.3d 1208, 1219-20 (11th Cir. 2007). Ultimately, the panel relied on *Marks v. United States*, 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977), for the proposition that, in determining *Rapanos*'s

6

holding, it was not free to consider the views of the Justices who dissented. *Id.* at 1221. Instead, the panel believed that it must determine "which of the positions taken by the *Rapanos* Justices *concurring in the judgment* is the 'narrowest,' i.e., the least 'far-reaching.'" *Id.* (citations omitted) (emphasis in original). The panel concluded that Justice Kennedy's "significant nexus" test fits that description because, "at least in wetlands cases such as *Rapanos*, [it] will classify a water as 'navigable' more frequently than Justice Scalia's test." *Id.* Therefore, the panel adopted Justice Kennedy's test as the governing definition of "navigable waters." *Id.* at 1222.

Applying that standard, the panel held that the jury instruction failed to comport with the "significant nexus" test and thus was erroneous. *Id.* The panel determined that this error was not harmless because the government presented no evidence about the possible chemical, physical, or biological effect that Avondale Creek may have on the Black Warrior River. *Id.* at 1223. Accordingly, the panel vacated the defendants' convictions and remanded the case for a new trial.

The panel recognized that "[t]his case arguably is one in which Justice Scalia's test may actually be more likely to result in CWA jurisdiction than Justice Kennedy's test." *Id.* Therefore, the panel noted, "the decision as to which *Rapanos* test applies may be outcome-determinative in this case." *Id.* at 1224.

7

Although the jury instruction was also erroneous under the plurality's test, the error "may well have been harmless" under that standard because a government witness "clearly and unambiguously testified that there is a continuous, uninterrupted flow between Avondale Creek and the Black Warrior River." *Id.* Nevertheless, in light of its conclusion that *Marks* required it to adopt Justice Kennedy's test, the panel determined that the harmless error analysis should be based on that standard alone. *Id.* For the same reason, the panel instructed the district court to apply Justice Kennedy's test on remand. *Id.*

## II. DISCUSSION

### A.

In *Marks*, the Supreme Court held: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" 430 U.S. at 193, 97 S. Ct. at 993 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 2923 n.15, 49 L. Ed. 2d 859 (1976) (plurality opinion)). However, the Court has recognized that the *Marks* test is "more easily stated than applied" in certain cases, and that it has "baffled and divided the lower courts that have considered it." *Nichols v. United States*, 511 U.S. 738, 745-46, 114 S. Ct. 1921, 1926-27, 128 L.

Ed. 2d 745 (1994); *see also Grutter v. Bollinger*, 539 U.S. 306, 325, 123 S. Ct. 2325, 2337, 156 L. Ed. 2d 304 (2003) (quoting *Nichols*); *Rapanos*, 547 U.S. at 758, 126 S. Ct. at 2236 (Roberts, C.J., concurring) (citing *Grutter*'s discussion of *Marks*). I conclude that the *Marks* framework is ill-suited as a guide to determining the holding of *Rapanos*. As the First Circuit explained in *United States v. Johnson*, 467 F.3d 56 (1st Cir. 2006), *cert. denied*, — U.S. —, 128 S. Ct. 375, 169 L. Ed. 2d 260 (2007), a review of *Marks* and the cases it relied upon reveals the limitations of the *Marks* rule in this context.

In *Marks*, the defendant asserted a due process challenge to his conviction for transporting obscene materials, arguing that he had been punished retroactively under a definition of obscenity established after his conduct occurred. The Court looked to a prior obscenity case, *Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts*, 383 U.S. 413, 86 S. Ct. 975, 16 L. Ed. 2d 1 (1966), to determine the state of the law at the time of the offense. In *Memoirs*, the Court reversed a state court's finding that a book was obscene and thus unprotected under the First Amendment, but the Justices in the majority offered different rationales in support of the judgment. Writing for himself and two other Justices, Justice Brennan concluded that the book would not be protected if it were deemed obscene under a correct interpretation of the

9

applicable legal standard.  *Memoirs*, 383 U.S. at 418-19, 86 S. Ct. at 977 (plurality opinion).  Justice Stewart concurred based on his view that the First Amendment permits suppression of hardcore pornography only.  *Id.* at 421, 86 S. Ct. at 979 (Stewart, J., concurring).  And Justices Black and Douglas concurred on the grounds that the First Amendment provides an absolute shield against governmental action aimed at suppressing obscenity.  *Id.* at 421, 86 S. Ct. at 979 (Black, J., concurring); *id.* at 426, 86 S. Ct. at 981 (Douglas, J., concurring).  The *Marks* Court determined that the position articulated in Justice Brennan's opinion represented the "narrowest grounds" for the judgment, and therefore that opinion constituted the holding of the Court.  *Marks*, 430 U.S. at 194, 97 S. Ct. at 994.

The source of *Marks*'s "narrowest grounds" language, *Gregg v. Georgia*, was a death penalty case in which the Court considered its prior fragmented decision in *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).  In *Furman*, five Justices agreed that the imposition of the death penalty in the cases before the Court constituted cruel and unusual punishment.  However, Justice Brennan and Justice Marshall would have reached the conclusion that capital punishment is *per se* unconstitutional.  *Id.* at 305, 92 S. Ct. at 2760 (Brennan, J., concurring); *id.* at 369-70, 92 S. Ct. at 2793 (Marshall, J., concurring).  The other three Justices agreed that the statutes at issue were invalid,

but left open the question whether capital punishment ever may be imposed. Among these Justices, Justice Stewart and Justice White believed that the statutes violated the Eighth Amendment because they permitted the death penalty to be imposed arbitrarily and capriciously. *Id.* at 306, 92 S. Ct. at 2760 (Stewart, J., concurring); *id.* at 310-11, 92 S. Ct. at 2763 (White, J., concurring). Justice Douglas deemed the statutes unconstitutional on the grounds that they were applied disproportionately against minorities and the poor due to their discretionary aspect and the ability of wealthier defendants to obtain superior counsel. *Id.* at 255-57, 92 S. Ct. at 2734-36 (Douglas, J., concurring). In *Gregg*, it was determined that the position taken by Justices Stewart and White represented the narrowest grounds for the judgment and thus constituted the Court's holding. *Gregg*, 428 U.S. at 169 n.15, 96 S. Ct. at 2923 n.15 (plurality opinion).

As these cases indicate, the *Marks* framework makes sense only in circumstances in which one Supreme Court opinion truly is "narrower" than another—that is, where it is clear that one opinion would apply in a subset of cases encompassed by a broader opinion. In *Memoirs*, for example, the Justices taking the absolutist view of the First Amendment would always rule in favor of protecting speech, while the Justices who believed that only non-obscene speech is protected would reach the same conclusion in a subset of those cases. Similarly,

11

in *Furman*, the Justices who believed that capital punishment is *per se* unconstitutional would invalidate death sentences in all future cases. The Justices who limited their decisions to the death penalty statutes before the Court would agree with that result in a subset of such cases. In each instance, the "narrower" opinion "fit entirely within a broader circle drawn by the others." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). In other words, the Justices supporting the broader position would *always* agree with the result reached by the author of the narrower opinion in cases where the latter's test was satisfied.

Several of our sister circuits have recognized this limitation on *Marks*'s scope. *See, e.g.*, *Johnson*, 467 F.3d at 64 ("[T]he 'narrowest grounds' approach makes the most sense when two opinions reach the same result in a given case, but one opinion reaches that result for less sweeping reasons than the other. When applied to future cases, the less sweeping opinion would require the same outcome in a subset of the cases that the more sweeping opinion would."); *King*, 950 F.2d at 781 ("*Marks* is workable—one opinion can be meaningfully regarded as 'narrower' than another—only when one opinion is a logical subset of other, broader opinions."); *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151 (10th Cir.) (same), *cert. denied*, — U.S. —, 127 S. Ct. 692, 166 L. Ed. 2d 536 (2006); *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003)

(same); *see also Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 134 (6th Cir. 1994) (finding that concurring opinion provided controlling rule under *Marks* because that opinion "set forth as its standard a coherent subset of the principles articulated in the plurality opinion").

B.

Neither the *Rapanos* plurality's nor Justice Kennedy's test is a subset of the other. The two tests simply set forth different criteria for determining whether a water is within the scope of the CWA. Unlike the Justices in *Memoirs* and *Furman*, neither the plurality nor Justice Kennedy necessarily would agree with the outcome reached by the other in any given case. In many instances, Justice Kennedy's test would result in a finding of CWA jurisdiction where the plurality's test would not. In others, however, the plurality would find jurisdiction even if Justice Kennedy reached the opposite conclusion. *See Johnson*, 467 F.3d at 64 (noting that *Rapanos* plurality would find jurisdiction in cases involving small surface water connection to stream or brook, but Justice Kennedy might not find significant nexus); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 725 (7th Cir. 2006) (per curiam) (same), *cert. denied*, — U.S. —, 128 S. Ct. 45, 169 L. Ed. 2d 12 (2007). The present case may fall within this latter category. As the panel recognized, the record here arguably establishes CWA jurisdiction under the

13

plurality's test but not Justice Kennedy's. *Robison*, 505 F.3d at 1223. It thus is difficult to understand how either test can be characterized as "narrower" than the other, at least as that term is understood in *Marks*.

Nevertheless, the panel concluded that Justice Kennedy's test is narrower than the plurality's because, "at least in wetlands cases such as *Rapanos*, [it] will classify a water as 'navigable' more frequently." *Id.* at 1221. The panel based this conclusion on the fact that Justice Kennedy rejected two "limitations" imposed by the plurality's test: "the requirement that 'navigable waters' must be 'relatively permanent, standing or flowing bodies of water' and the requirement of a 'continuous surface connection.'" *Id.* at 1221-22 (citations omitted). However, Justice Kennedy's test imposes a limitation that is absent under the plurality's test: the showing of a "significant nexus" between the water at issue and "waters that are or were navigable in fact or that could reasonably be so made." *Rapanos*, 547 U.S. at 759, 126 S. Ct. at 2236 (Kennedy, J., concurring). Furthermore, Justice Kennedy rejected the plurality's test in part because he deemed it overinclusive in certain respects. *See id.* at 769, 126 S. Ct. at 2242 (Kennedy, J., concurring) (stating that, under plurality's test, "[t]he merest trickle, if continuous, would count as a 'water' subject to federal regulation"); *id.* at 776-77, 126 S. Ct. at 2246 ("[B]y saying the Act covers wetlands (however remote) possessing a surface-

14

water connection with a continuously flowing stream (however small), the plurality's reading would permit applications of the statute as far from traditional federal authority as are the waters it deems beyond the statute's reach."). Thus, Justice Kennedy's test is not uniformly narrower than the plurality's, and Justice Kennedy did not regard it as such.

Moreover, the *Marks* rule does not turn on the frequency with which a given test will be satisfied. Under *Marks*, the "narrowest" ground is that which reflects a common denominator implicitly supported by the Justices concurring in the judgment. *See King*, 950 F.2d at 781. As discussed, there is no such common denominator in *Rapanos*. Thus, however frequently it may result in CWA jurisdiction, Justice Kennedy's test is not "narrower" than the plurality's approach for purposes of *Marks*; it is a different standard altogether.

For these reasons, I agree with the First Circuit that *Marks* provides little, if any, guidance as to the proper interpretation of *Rapanos*. *See Johnson*, 467 F.3d at 64 (noting "the shortcomings of the *Marks* formulation in applying *Rapanos*); *see also Carrizales-Toledo*, 454 F.3d at 1151 ("We do not apply *Marks* when the various opinions supporting the Court's decision are mutually exclusive."). The panel acknowledged these limitations, *see Robison*, 505 F.3d at 1221 n.14 (noting that "*Marks* does not 'translate easily' to *Rapanos*") (quoting *Johnson*, 467 F.3d at

15

64), but nonetheless concluded that *Marks* barred it from considering the views of the dissenting Justices in identifying *Rapanos*'s holding. As discussed below, however, that conclusion is inconsistent with later Supreme Court and Circuit precedents approving the consideration of such views in circumstances similar to those involved here.

C.

In considering its own prior fragmented decisions, the Supreme Court has frequently analyzed dissents in combination with other opinions to identify the legal principles that have the support of a majority of the Justices. *See, e.g.*, *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, —, 126 S. Ct. 2594, 2607, 165 L. Ed. 2d 609 (2006) (citing concurring and dissenting opinions to establish majority support for legal proposition); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17, 103 S. Ct. 927, 937, 74 L. Ed. 2d 765 (1983) (finding that four dissenting Justices and concurring Justice formed majority to reaffirm controlling legal standard); *see also Waters v. Churchill*, 511 U.S. 661, 685-86, 114 S. Ct. 1878, 1893, 128 L. Ed. 2d 686 (1994) (Souter, J., concurring) (analyzing plurality, concurring, and dissenting opinions to identify legal test to be applied by lower courts); *Alexander v. Sandoval*, 532 U.S. 275, 281-82, 121 S. Ct. 1511, 1517, 149 L. Ed. 2d 517 (2001) (noting agreement

between Justice who joined plurality and four dissenters).  In the panel's view, however, the authority to consider dissenting opinions is confined to the Supreme Court.  Lower courts, the panel believed, "do not have that luxury."  *Robison*, 505 F.3d at 1221.

However, the Supreme Court has expressly approved the consideration of dissenting Justices' views by a court of appeals.  In *Moses H. Cone* (a post-*Marks* case), the petitioner argued that the *Colorado River* test[2] governing the entry of a stay of federal court proceedings had been overruled by a subsequent case, *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S. Ct. 2552, 57 L. Ed. 2d 504 (1978).  The Court rejected this argument, noting that the opinion announcing the judgment in *Will* garnered the support of only four Justices.  Justice Blackmun provided the fifth vote for reversal but agreed with the dissenters that the *Colorado River* test was controlling.  Thus, the Court in *Moses H. Cone* noted: "On remand, the Court of Appeals correctly recognized that the four dissenting Justices and Justice Blackmun formed a majority to require application of the *Colorado River* test."  460 U.S. at 17, 103 S. Ct. at 937.

We have followed the same approach in interpreting fractured Supreme Court decisions.  For example, in *Martin v. Dugger*, 891 F.2d 807 (11th Cir.

---

[2] *See Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

1991), *overruling on other grounds recognized in Johnson v. Singletary*, 991 F.2d 663, 667 (11th Cir. 1993) (per curiam), we held that the district court had improperly relied on the plurality view in *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986), to determine the showing necessary for a court to consider the merits of a successive habeas petition. Instead, we looked to both the plurality opinion and the dissenting opinions in *Kuhlmann* to ascertain the legal principle agreed upon by a majority of the Court. *See Martin*, 891 F.2d at 808-09 & n.2. After analyzing these various opinions, we concluded:

> Thus, a majority of the court agrees that a showing of innocence is a factor that may be appropriately considered. Although in *Kuhlmann* the premise that factual innocence is one of the grounds to be considered commands a "majority" only by grouping justices who disagree as to the result, nonetheless we believe this situation is sufficiently analogous to that of . . . *Marks v. United States* to warrant deference to the common ground among members of the fragmented Court. This is especially true as the three dissenting justices made explicit their agreement with the more limited premise (that factual innocence was *one* of the factors to consider), which was encompassed by the position of the four justice plurality.

*Id.* at 809 n.2 (citations omitted).

As in *Kuhlmann*, the dissenters in *Rapanos* explicitly stated their agreement with the narrower premises advocated by the Justices supporting the judgment. That is, they agreed that waters described by either the plurality's or Justice Kennedy's test are within the scope of CWA jurisdiction. *See Rapanos*, 547 U.S.

18

at 810, 126 S. Ct. at 2265 (Stevens, J., dissenting). We thus do not need to speculate whether these Justices would find jurisdiction in this case if the record indicates that the plurality's test has been satisfied. They have stated unequivocally that they would do so.

Our decision in *McCullough v. Singletary*, 967 F.2d 530 (11th Cir. 1992), likewise took dissenting opinions into account as part of its analysis. In *McCullough*, we agreed with the Fifth Circuit's interpretation of *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), a fractured decision involving a defendant's Eighth Amendment challenge to his sentence on grounds of proportionality. *See McCullough*, 967 F.2d at 535 (citing *McGruder v. Puckett*, 954 F.2d 313 (5th Cir. 1992)). The Fifth Circuit "appl[ied] a head-count analysis" of *Harmelin*—one that included consideration of the views of the four dissenting Justices—and concluded that "seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences." *McGruder*, 954 F.2d at 316.

In light of this authority, I believe that the panel erred in basing its harmless error analysis exclusively on Justice Kennedy's test. The panel also should have considered whether the district court's erroneous jury instruction was harmless under the plurality's test. This "simple and pragmatic" approach, *Johnson*, 467

19

F.3d at 64, would have given recognition to the indisputable fact that there is majority support among the Justices for both the plurality's and Justice Kennedy's tests. Moreover, it might have avoided the bizarre outcome created by the panel decision: that this case has been remanded for a new trial even though, as the panel acknowledges, the current record may well establish jurisdiction under the plurality's test, which eight Justices agree encompasses waters covered by the Act. Had the panel concluded that the instructional error was not harmless under the plurality's test, it should have instructed the district court that the government may prove jurisdiction on remand under either the plurality's or Justice Kennedy's test. *See Rapanos*, 547 U.S. at 810 n.14, 126 S. Ct. at 2265 n.14 (Stevens, J., dissenting).

D.

The panel's error, I believe, is of sufficient magnitude as to warrant en banc consideration. Review by the full court is appropriate where a panel decision constitutes a "precedent-setting error of exceptional importance" and is "in direct conflict with precedent of the Supreme Court or of this circuit." 11th Cir. R. 35-3. For the reasons discussed above, I conclude that the panel's decision conflicts with the Supreme Court's decision in *Moses H. Cone* and with our decisions in *Martin* and *McCullough*. The exceptional importance of this error is apparent in

20

view of the geography of the states in the Eleventh Circuit and the frequency with which CWA cases are likely to arise in this Circuit in the future. The large number of water bodies and wetlands in the region, coupled with the significant pace of development, suggests that later disputes over the scope of federal authority under the Act may occur with some regularity.[3]

An additional consideration supporting en banc review is the fact that the panel's opinion goes farther than the other circuit court decisions that have found Justice Kennedy's test to be the applicable *Rapanos* standard. No other circuit has held that the plurality's test is *never* applicable, even where, as here, that test may result in a finding of jurisdiction. Thus, the Ninth Circuit amended its original opinion in *Northern California River Watch v. City of Heraldsburg* to note that Justice Kennedy's concurrence provided "the controlling rule of law *for our case*" and that it is "the narrowest ground to which a majority of the Justices would assent if forced to choose *in almost all cases*." 496 F.3d 993, 999-1000 (9th Cir. 2007) (emphasis added), *cert. denied*, — U.S. —, — S. Ct. —, 76 U.S.L.W. 3438 (U.S. Feb. 19, 2008) (No. 07-625).[4] The Seventh Circuit in *Gerke* held that Justice

---

[3] The United States notes in its petition for rehearing en banc that many tributaries in this Circuit flow year-round and thus would readily satisfy the plurality's test.

[4] The court's initial opinion discussed *Rapanos* in more categorical terms. *See N. Cal. River Watch v. City of Healdsburg*, 457 F.3d 1023, 1029 (9th Cir. 2006) ("Justice Kennedy, constituting the fifth vote for reversal, concurred only in the judgment and, therefore, provides the controlling rule of law.").

Kennedy's test "must govern the further stages of this litigation," 464 F.3d at 725, but did not hold that his test applies in all cases. In fact, the court arguably suggested to the contrary. *See id.* (noting that in a case involving a slight hydrological connection, Justice Kennedy might vote against a finding of jurisdiction "only to be outvoted 8-to-1."). Thus, the panel's decision not only conflicts with the First Circuit's ruling in *Johnson*; it also announces a more sweeping interpretation of *Rapanos* than that adopted by any other circuit.

Finally, I note that the reach of the panel's decision will not be confined to CWA cases. The decision will have relevance across a range of future cases involving the interpretation of a fractured Supreme Court decision. To ensure that our case law conforms to the Court's teachings on that issue and provides consistent guidance to courts in this Circuit, en banc review would have been proper in this case.

For these reasons, I respectfully dissent from the denial of rehearing en banc.